**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RYAN EISNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-4383 |
| | ) | |
| FREED KANNER LONDON & | ) | |
| MILLEN LLC, and MCGUIRE LAW PC, | ) | |
| | ) | |
| Defendants. | ) | |

**JOINT NOTICE OF REMOVAL**

Defendants, Freed Kanner London & Millen LLC (n/k/a Justice Jagher London & Millen LLC) ("**Freed**") and McGuire Law PC ("**McGuire**"), hereby jointly give notice of the removal of this action, pursuant to 28 U.S.C. §§1331, 1441(a), and 1446, from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois ("**Notice of Removal**"). In support, Freed and McGuire state as follows:

**PREFATORY STATEMENT**

1. Freed and McGuire are currently serving as class counsel in a preliminarily approved class settlement pending before the Honorable Lindsay C. Jenkins in *Tuccori et al. v. At World Properties, LLC et al.*, No. 1:24-cv-00150 (N.D. Ill.) ("*Tuccori*"). The *Tuccori* settlement resolves federal and state antitrust claims against real estate brokerages and other co-conspirators arising out of an alleged antitrust conspiracy to artificially fix and maintain broker commissions at elevated rates.

2. As explained below, Plaintiff Ryan Eisner's ("**Eisner**") counsel, on behalf of Eisner and other plaintiffs in other litigation, have repeatedly sought to impede the *Tuccori* settlement by

filing a series of meritless motions, all of which have been denied. These include a motion to intervene in *Tuccori*, a motion to reassign *Tuccori* to another judge, a motion to enjoin brokerage defendants from participating in the settlement, and a motion to be appointed interim class counsel for class members that Freed and McGuire have already been appointed to represent. Each of these motions has been denied as unnecessary, without merit, or both.

3.　In an attempt to escape these adverse rulings and evade Judge Jenkins' supervision, Eisner, through the same counsel, filed a "Class Action Complaint" ("**Eisner Illinois Complaint**") against Freed and McGuire in the Circuit Court of Cook County on March 20, 2026, captioned *Ryan Eisner v. Freed Kanner London & Millen LLC and McGuire Law PC*, Case No. 2026 CH 02692 (the "**Illinois State Action**").

4.　Eisner's Illinois State Action is yet another improper and baseless attempt to impede the preliminarily approved *Tuccori* settlement currently under the supervision of Judge Jenkins. Removal is appropriate pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. The grounds for removal are set forth herein.

**<u>OVERVIEW</u>**

5.　Pursuant to 28 U.S.C. §1446(a), Defendants attach true and correct copies of (i) the docket from the Illinois State Action as of April 16, 2026 (Exhibit A); (ii) the Eisner Illinois Complaint filed in the Illinois State Action (Exhibit B); and (iii) summons and complaint served on Freed and McGuire in the Illinois State Action (Exhibits C and D, respectively).

6.　As shown below, removal jurisdiction rests on 28 U.S.C. §1331. The Eisner Illinois Complaint arises under federal law, including the Sherman Act, 15 U.S.C. §1, the fiduciary duties

federal law imposes on class counsel, and orders of the United States District Court for the Northern District of Illinois.

7. The Eisner Illinois Complaint is a collateral attack on the pending federal class action settlement in *Tuccori*, assigned to the calendar of Judge Jenkins.[1]

8. Defendants in the Illinois State Action are two law firms. They represent the named plaintiffs and a conditionally certified settlement class in *Tuccori* ("***Tuccori* Class Counsel**").

9. In brief, the *Tuccori* plaintiffs allege that real estate brokerage firms, among other things, conspired to inflate the commissions paid to real estate brokers as part of residential real estate transactions. The named plaintiffs in *Tuccori* are home purchasers. They allege that they bought homes with the assistance of a real estate broker and, due to the conspiracy, paid an artificially inflated purchase price through the elevated real estate commissions. *See* First Amended Consolidated Class Action Complaint (*Tuccori* ECF 123, March 6, 2026) ¶¶1-31. They allege that the defendant brokerages violated Section 1 of the Sherman Act, 15 U.S.C. §1. *Id.* ¶¶184-94 (Count I). They also plead violations of state antitrust laws, *id.* ¶¶195-204 (Count II); State consumer protection laws, *id.* ¶¶205-20 (Count III); and common law unjust enrichment, *id.* ¶¶221-27 (Count IV).

10. On October 16, 2025, Judge Jenkins entered a Preliminary Approval Order regarding a settlement with certain *Tuccori* defendants. *Tuccori* ECF 65. The Order conditionally certified a settlement class consisting of (subject to certain limited exceptions): "All persons who purchased a home that was listed on an MLS [Multiple Listing Service] anywhere in the United

---

[1] Freed and McGuire intend to file a motion under Local Rule 40.4(c) with Judge Jenkins in *Tuccori* to reassign this removed action to her calendar based on relatedness.

States where a commission was paid to any brokerage in connection with the transaction during the Class Period." *Id.* ¶5.

11. The Preliminary Approval Order also included the following findings:

a. Preliminary approval of the parties' class settlement, finding it "fair, reasonable and adequate," "negotiated at arm's length by experienced counsel acting in good faith, including through multiple mediation sessions with highly experienced mediators," and "likely [to] be . . . approve[d] . . . pursuant to Rule 23(e)(2)." *Id.* ¶3.

b. The prerequisites to class action treatment under Fed. R. Civ. P. 23(a) and 23(b)(3) have been preliminarily satisfied. *Id.* ¶4.

c. Appointing counsel from the Freed and McGuire firms as *Tuccori* Class Counsel pursuant to Fed. R. Civ. P. 23(g), finding that counsel and the plaintiff class representatives "will fairly and adequately protect the interests of the Settlement Class," in part because "Plaintiffs and the Settlement Class Members are represented by qualified, reputable counsel who are experienced in prosecuting class action cases, including those concerning antitrust violations." *Id.* ¶¶10-11.

12. The Preliminary Approval Order further stated: "In making these preliminary findings, the Court has considered, *inter alia*, (1) the interests of the Settlement Class Members in individually controlling the prosecution or defense of separate actions; (2) the impracticality or inefficiency of prosecuting or defending separate actions; (3) the extent and nature of any litigation

concerning these claims already commenced; and (4) the desirability of concentrating the litigation of the claims in a particular forum." *Id.* ¶9.

13.     The *Tuccori* settlement includes a court-approved opt-in procedure—modeled on a similar opt-in mechanism employed in a prior real estate broker antitrust case—by which non-parties that allegedly participated in the antitrust conspiracy can opt in to the settlement in exchange for (1) agreeing to maintain certain practice changes and (2) contributing a payment to the settlement's fund, thereby increasing the total monetary relief available to the class. *Tuccori* ECF 58-1 ¶¶35-36. Because the alleged conspiracy at issue in *Tuccori* covers almost the entire real estate brokerage industry, this opt-in procedure is appropriate to resolve claims the *Tuccori* settlement class members have against other named and unnamed alleged co-conspirators.

14.     The Preliminary Approval Order also appointed the retired former Chief Judge of the Northern District of Illinois, Hon. James F. Holderman, now with JAMS Chicago, as Special Master for Mediation. *Tuccori* ECF 65 ¶15. Judge Holderman's duties include conducting mediations with non-party brokerage firms who elect to participate in mediation as an "Opt-In Settlor" pursuant to the settlement. *Id.* This opt-in process permits non-party real estate brokerage firms to benefit the *Tuccori* class by negotiating with the *Tuccori* plaintiffs and contributing to the settlement if an agreement can be reached.

15.      The Preliminary Approval Order also affirmed the rights of class members to opt out of the settlement in a timely and proper manner as provided in the Order. *Id.* ¶¶17-18. Any class member (including Eisner) who opts out is not bound by any final order approving the settlement. *Id.* ¶20.

16.     The Preliminary Approval Order provides that a date for a final approval hearing would be scheduled for purposes including the following:

    a.     to finally determine whether the applicable prerequisites for settlement class action treatment under Rule 23 of the Federal Rules of Civil Procedure have been met; and

    b.     to determine whether the settlement is fair, reasonable and adequate, and should be approved by the Court. *Id.* ¶28.

17.     Eisner alleges that he is a member of the settlement class in *Tuccori*. Eisner Illinois Complaint (Ex. B) ¶6. Eisner also alleges that he is a named plaintiff in two other pending federal class actions, *Batton v. Nat'l Ass'n of Realtors et al.*, No. 21-cv-00430 (N.D. Ill.) ("***Batton***"), and *Davis et al. v. Hanna Holdings, Inc.*, No. 2:24-cv-2374-WB (E.D. Pa.), involving some of the same alleged conduct and defendants as *Tuccori*. *See, e.g., id.* ¶¶6, 14-22. *See also* Second Amended Complaint, filed on November 26, 2024, *Batton* ECF 163 (naming Eisner as one of the *Batton* plaintiffs).

18.     Eisner alleges that the pending *Tuccori* class settlement is unfair to the class and that *Tuccori* Class Counsel breached fiduciary duties to the class in negotiating and pursuing the settlement. Eisner Illinois Complaint (Ex. B) ¶¶1, 6, 13, 39-42. He purports to represent a subclass of the *Tuccori* class ("**Illinois *Tuccori* Subclass**"), comprised of "[a]ll Illinois resident members of the Settlement Class as defined in the *Tuccori* settlement agreement, No. 24-CV-00150 (N.D. Ill.), ECF No. 58-1 at 15." *Id.* ¶45.

19.     Among the issues that Eisner alleges to be common to the class in the Illinois State Action are: (i) "Whether [*Tuccori* Class Counsel] owed a fiduciary duty to [Illinois *Tuccori*

Subclass] members"; (ii) "Whether [*Tuccori* Class Counsel] breached that duty by entering into a settlements with Anywhere and Hanna that was designed to, and did, release the Class's claims against Anywhere for less than their fair value"; and (iii) "What is the fair value of the claims against Anywhere and Hanna that [*Tuccori* Class Counsel] released." *Id.* ¶51.

20. As a purported member of the *Tuccori* class, Eisner has a right to raise the same issues in *Tuccori* through an objection. Indeed, that is the appropriate procedure under Federal Rule of Civil Procedure 23(e) for objecting to a class settlement. *See* ¶¶26-32 below.

21. On February 24, 2026, the "*Batton* Plaintiffs," which include Eisner, moved to intervene in *Tuccori* on behalf of the "*Batton* Plaintiffs" to object to application of the *Tuccori* class settlement to "Opt-In Settlor" Anywhere Real Estate, arguing, *inter alia*, that Tuccori Class Counsel was not adequate and that the proposed settlement is "weak" and an unfair "reverse auction." *Tuccori* ECF 100 at 7. The motion to intervene was filed by the same lawyers who represent Eisner in the Illinois State Action. *Compare Tuccori* ECF 100 at 9-10 *with* Eisner Illinois Complaint (Ex. B) at 19. Anywhere Real Estate is a defendant in *Batton*. The *Tuccori* Plaintiffs opposed intervention. *Tuccori* ECF 110 (response brief).

22. On March 4, 2026, Judge Jenkins denied intervention because the *Batton* Plaintiffs already have a right to participate in the fairness hearing in *Tuccori* and to raise objections. *Tuccori* ECF 117-18. Judge Jenkins found: "[Aaron] Batton's interests will not be impaired if intervention is denied. He may object to the settlement and will have the opportunity to be heard in connection with the final approval hearing. . . . Batton will have an opportunity to present concerns about the proposed settlement at that hearing, so his interest is not impaired within the meaning of Rule

24(a)." *Tuccori* ECF 118 at 2. As a *Batton* Plaintiff and member of the *Tuccori* Class, Eisner also enjoys that right, one that arises under and exists pursuant to federal law.[2]

23.     The *Batton* Plaintiffs, through Eisner's counsel in the Illinois State Action, appealed Judge Jenkins' order denying leave to intervene, *Tuccori* ECF 124-25. They also moved to stay the *Tuccori* proceedings pending the appeal. *Tuccori* ECF 130. Both the appeal and the motion to stay proceedings are still pending.

24.     The *Batton* Plaintiffs (including Eisner), through Eisner's identical counsel in the Illinois State Action, also tried to interfere with Judge Jenkins' orderly consideration of the *Tuccori* settlement by filing a motion to reassign *Tuccori* from her calendar to the calendar of Judge Hunt, who presides over *Batton*. *Batton* ECF 271. They also moved to preliminarily enjoin Anywhere from proceeding with its settlement in *Tuccori*. *Batton* ECF 273. Judge Hunt denied both motions. *Batton* ECF 294.

25.     Judge Hunt denied reassignment because Judge Jenkins had greater familiarity with the *Tuccori* settlement and the cases were in different procedural postures: "[T]hese cases are just in different places procedurally, and . . . there would be no efficiency gained by me taking over Judge Jenkins' cases, particularly given all of the work that she has put into it and the fact that the *Tuccori* cases are really at the point of settlement." March 5 Transcript at 6:19-7:23 (Ex. E).

26.     Judge Hunt also denied the injunction request because there was no risk of irreparable harm to the *Batton* Plaintiffs. *Id*. at 8:12-10:13. Judge Hunt held that the *Batton*

---

[2]     Although Judge Jenkins' Order specifically refers to only one of the *Batton* Plaintiffs, Aaron Batton, the motion to intervene was brought on behalf of all *Batton* Plaintiffs. *Tuccori* ECF 100.

Plaintiffs, including Eisner, already have an adequate remedy available to them: objecting to the

*Tuccori* settlement at the fairness hearing:

> [T]here is a process in place, and the plaintiffs will have an opportunity to raise their objection to that settlement as unfair based on whatever grounds they want to pursue. And so, that is . . . a sufficient remedy; and, therefore, there would be no basis for this Court to grant a preliminary injunction.
> * * *
>
> I understand the [*Batton*] plaintiffs disagree with [Judge Jenkins'] rulings and with the way that that settlement process is proceeding, but there will be an opportunity to raise all of those objections at the fairness hearing.

*Id.* at 9:15-20, 10:8-11.

27. As a matter of federal law, pursuant to her obligations to provide due process to the class members and under Fed. R. Civ. P. 23, Judge Jenkins will consider any objection made by Eisner or any other *Tuccori* class member (including members of the Illinois *Tuccori* Subclass), and, regardless of any objection, decide at the fairness hearing in *Tuccori* the same issues that Eisner unsuccessfully tried to raise via intervention, unsuccessfully tried to raise via the *Batton* Plaintiffs' preliminary injunction motion, and has now raised in the Eisner Illinois Complaint.

28. Specifically, in discharging her duties, Judge Jenkins will consider as a matter of federal law whether the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P 23(e)(2). She will also consider the adequacy of the *Tuccori* Class Counsel, including any purported defect that Eisner raises in the Eisner Illinois Complaint: whether, as he alleges, the *Tuccori* Class Counsel breached their fiduciary duties to the *Tuccori* class (which includes the Illinois *Tuccori* Subclass), including by allegedly setting up a "reverse auction" that supposedly sells out the class in order to garner attorneys' fees for little work. Eisner Illinois Complaint (Ex. B) ¶¶30-38. *See Laskey v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 638 F.2d 954, 957 (6th

Cir. 1981) ("[F]inding that the class was adequately represented is necessary for finding the settlement was fair and reasonable."). Federal courts routinely consider such allegations against class counsel in evaluating settlements. *See, e.g., In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 923-26 & 933 n.24 (N.D. Ill. 2022) (discussing in detail, and rejecting, objectors' allegations regarding class counsel's financial motivations); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 07 C 2898, 2011 WL 3290302, at *4 (N.D. Ill. July 26, 2011) (considering, and rejecting, objectors' allegations that the proposed settlement agreement demonstrated "collusion, a reverse auction, [or] self-dealing").

29.     Fed. R. Civ. P. 23(g) requires that the federal court that certifies a class also appoint class counsel and expressly recognizes a "duty of class counsel" to "fairly and adequately represent the interests of the class." As a matter of federal law, the duties of the *Tuccori* Class Counsel to the *Tuccori* class, including the Illinois *Tuccori* Subclass, under Rule 23(g)(4) overlap with the fiduciary duties Eisner alleges in the Eisner Illinois Complaint. "Class counsel owe a fiduciary obligation of particular significance to their clients when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf." *Creative Montessori Learning Ctrs v. Ashford Gear LLC,* 662 F.3d 913, 917 (7th Cir. 2011) (collecting authority re: fiduciary obligations of class counsel); *see also Savanna Group v. Truan*, 10 C 7995, 2013 WL 626981, at *2 (N.D. Ill. Feb. 20, 2013) (same).

30.     As Judge Jenkins already noted in denying the *Batton* Plaintiffs' motion to intervene, class members, like Eisner, may raise as part of their objections to the *Tuccori* settlement

10

the issues that were raised in the motion to intervene, and those issues will be resolved by Judge Jenkins as part of her evaluation of the settlement. *Tuccori* ECF 100, ECF 118.

31.    As part of her evaluation of the fairness of the *Tuccori* settlement, Judge Jenkins must also determine whether the settlement compensation and other relief is adequate, "taking into account," among other things, "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e). This analysis necessarily will require Judge Jenkins to evaluate the strengths and weaknesses of the Sherman Act claim at issue. *See, e.g., Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 284-86 (7th Cir. 2017) (collecting authorities) (explaining that the "most important factor relevant to the fairness of a class action settlement is . . . the strength of plaintiff's case on the merits balanced against the amount offered in the settlement," which "requires acknowledgment of potential defenses and the risk of failure for the class," and holding that the district court did not abuse its discretion in finding the proposed settlement reasonable in light of the strength of an arbitration defense); *TikTok,* 617 F. Supp. 3d at 935-37 (in considering the fairness of a class action settlement, weighing "the probabilities and possibilities of victory or defeat" against the benefits of the settlement, including the strength of arbitration and standing defenses, as well as weaknesses in the plaintiffs' claims for false advertising and unfair competition); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 980-81 (N.D. Ill. 2011) (in considering the fairness of a class action settlement, weighing the strength of plaintiffs' claims under the Internet Tax Freedom Act against the benefits of the settlement, including the "potentially effective defenses to the instant action, which could deny the Class Members much or all of their sought-after relief").

32.    Put simply, the very issues raised in the Eisner Illinois Complaint will be decided by Judge Jenkins as a matter of federal law. She will decide, among other things, whether or not *Tuccori* Class Counsel have comported with the fiduciary duties federal law imposes on them and whether or not the *Tuccori* settlement is fair and reasonable in light of the claims, defenses, and risks of the Sherman Act claim at issue in *Tuccori*.

### FEDERAL-QUESTION JURISDICTION EXISTS UNDER 28 U.S.C. §1331.

33.    The fiduciary duty claim alleged in the Illinois State Action arises under federal law. The duties *Tuccori* Class Counsel owe to the *Tuccori* class, including the Illinois *Tuccori* Subclass, arise under and exist as a matter of federal law. Additionally, the adequacy of the *Tuccori* settlement arises under federal law, as it is embedded in and requires consideration of the merits of the Sherman Act claim at issue in the case.

34.    Federal courts have "long recognized that [federal-question] jurisdiction will lie over some state-law claims that implicate significant federal issues." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 308 (2005). A state-law claim implicates significant federal issues where the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton,* 568 U.S. 251, 258 (2013). When those requirements are met, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313).

35.     Each of these elements is met. The Illinois State Action necessarily raises a federal issue about which there is an actual dispute, satisfying the first and second factors. Eisner alleges that Freed and McGuire have breached their fiduciary duties to the Illinois *Tuccori* Subclass in their role as *Tuccori* Class Counsel, which they in turn dispute. To determine whether any fiduciary duties have been breached, a court will need to first determine the scope and the nature of the particular fiduciary duties owed by federal class counsel, which are recognized in Federal Rule of Civil Procedure 23(g)'s mandate that class counsel "fairly and adequately represent the interests of the class," *supra* ¶¶28-29. Judge Jenkins will consider whether Freed and McGuire's alleged actions have met those standards when she assesses the adequacy of class counsel's representation at the upcoming fairness hearing in the *Tuccori* action. Such assessments are the exclusive provenance of the federal court tasked with holding the fairness hearing. *See Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 986 & 992 (11th Cir. 2020) (explaining that the district court is "solely responsible for making all Rule 23 determinations related to [class counsel]'s requests to certify a class and approve a class settlement," and in a different procedural context, describing a state court filing alleging breach of fiduciary duty against class counsel as an "impermissible collateral attack on [class counsel]'s attempt to certify and settle a class action," and "a thinly-veiled attempt to derail the [federal class-action] settlement"). *See also Townes Telecomms., Inc. v. Nat'l Telecomms. Coop. Ass'n*, 391 F. Supp. 3d 585, 590 (E.D. Va. 2019) (finding first *Gunn* factor met because "plaintiffs cannot succeed on either of their claims without resolution of the [federal] issue").

36.     State-law claims for breach of fiduciary duty have been found to raise a federal question in similar contexts involving class counsel appointed by federal courts. For example, in

*Casey v. Denton*, a court in the Southern District of Illinois denied a motion to remand a putative class action for legal malpractice against lead counsel in a federal MDL, holding that "whether Lead/Liaison counsel owed plaintiffs a duty turns on a federal question essential to the resolution of plaintiffs' claims," specifically, "in an MDL context created under federal statute 28 U.S.C. § 1407, what is the fiduciary relationship or the attorney/client relationship, between MDL leadership and the individual plaintiffs within the litigation?" No. 3:17-CV-00521, 2017 WL 3461363, at *3-4 (S.D. Ill. Aug. 11, 2017). And, in a pre-*Gunn/Grable* case, the Southern District of Texas held that it had federal-question jurisdiction because state claims for breach of fiduciary duty and legal malpractice relating to federal settlement were "inescapably infused with the overriding federal concerns that were the basis of these Plaintiffs' causes of action" in the federal action," and "would necessarily entail a reconsideration of the validity of the [federal] settlement and handling of the litigation." *Chance v. Sullivan,* 993 F. Supp. 565, 567 (S.D. Tex. 1998).

37.     The third factor is satisfied because the federal issues are also substantial, meaning that they are "importan[t] . . . to the federal system as a whole." *Gunn*, 568 U.S. at 260. In *Gunn*, the Supreme Court determined that the federal issue within the legal malpractice claim at issue was not substantial because the malpractice claim was a "backward-looking" claim that "will not change the real-world result of the prior federal patent litigation." *Id*. at 261. Here, in contrast, Eisner seeks a ruling that challenges the propriety of a pending settlement in federal court. It thus is forward-looking and implicates the federal system more broadly because, if remanded to state court, it will encourage dissatisfied class members in federal class actions to file state suits for breach of fiduciary duty or malpractice against class counsel to prevent settlement, rather than following federal procedures to object to the proposed settlement. *See, e.g., Wyly v. Weiss*, 697 F.3d

14

131, 144 (2d Cir. 2012) (describing, in a different procedural context, "a justified fear that allowing malpractice suits in state court against [federal class counsel] might unleash such suits upon class counsel in fora far and wide and thereby undermine the class action system as a whole") (cleaned up). *See also, e.g., New Life Ventures, Inc. v. Locke Lord LLP*, 2:19-CV-00162-JRG, 2019 WL 13212632, at *3 (E.D. Tex. Sept. 27, 2019) (finding state-law claims for malicious prosecution relating to a patent suit sufficiently implicated federal issues to deny remand because the state-law claim sought attorneys' fees that had already been denied in federal court and therefore the requested remedy would, unlike in *Gunn*, "change the real-world result of the prior federal . . . litigation").

38. Finally, the issues in this case are capable of resolution in federal court without derailing the federal-state balance approved by Congress. Indeed, it is Eisner's resort to a state court filing to interfere with the orderly process in *Tuccori* under Fed. R. Civ. P. 23 that threatens the federal-state balance approved by Congress. The fiduciary duties of federal class counsel and a federal judge's management and oversight under the corresponding federal Rule 23 of a proposed class settlement of a Sherman Act and pendent claims do not implicate state law in any meaningful way and their resolution in federal court would likely dispose of the Illinois State Action. *See, e.g., Townes*, 391 F. Supp. 3d at 595-96 (finding the final *Gunn/Grable* factor satisfied with respect to a declaratory judgment claim that implicated a federal statute because "jurisdiction over actions like plaintiffs' will not materially affect, or threaten to affect, the normal currents of litigation" so "there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart" of the claim) (citing *Grable*, 545 U.S. at 319) (cleaned up). The far greater risk is encouraging collateral and wasteful litigation in state court, when there is already a meaningful

opportunity for Eisner and any other class member to object to a proposed settlement through the Rule 23 process in the related pending (and prior-filed) federal court action.

## REMOVAL IS PROPER UNDER 28 U.S.C §1441(a).

39.     Venue is proper in this district and division under 28 U.S.C. § 1441(a) because this action was removed from the Circuit Court of Cook County, Illinois, which is located within the division of this Court. Therefore, this is the district and division "embracing the place where" the Illinois State Action was pending.

## REMOVAL REQUIREMENTS UNDER SECTION 1446 ARE MET.

40.     Removal is timely. Under 28 U.S.C. § 1446(b)(2)(B), each defendant has "30 days after receipt by or service on that defendant of the initial pleading or summons" to file a notice of removal. Where defendants are served at different times, any earlier-served defendant may consent to removal by a later-served defendant.

41.     Defendant Freed was served with a copy of the complaint and summons in the Illinois State Action on March 23, 2026; Defendant McGuire was served on April 8, 2026.

42.     The Notice of Removal was filed within 30 days after service of both defendants. Thus, removal is timely.

43.     As required under 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, orders, and documents served on Freed and McGuire in the Illinois State Action are attached hereto as Exhibits C and D.

44.     Pursuant to 28 U.S.C. § 1446(d), after filing this Notice of Removal, Freed and McGuire will promptly serve written notice of this Notice of Removal on counsel for all adverse parties and file the same with the Clerk of the Circuit Court of Cook County.

**NON-WAIVER OF DEFENSES**

45.     By removing this action from the Circuit Court of Cook County, Freed and McGuire do not waive any defenses available to them. By removing this action from the Circuit Court of Cook County, Freed and McGuire do not admit any of the allegations in the Eisner Illinois Complaint.

46.     Defendants Freed and McGuire reserve their rights to amend or supplement this Notice of Removal.

WHEREFORE, Defendants Freed and McGuire respectfully remove the above-captioned action from the Circuit Court of Cook County to the United States District Court for the Northern District of Illinois, and ask the Court to grant such relief as it deems just and proper.

Dated: April 17, 2026                    Respectfully submitted,

                                         FREED KANNER LONDON & MILLEN LLC,
                                         and MCGUIRE LAW PC

                                         By: /s/ *Edward W. Feldman*
                                                 One of Their Attorneys

Edward W. Feldman
Diane F. Klotnia
A. Michaela Kabat
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 W. Monroe Street, Suite 1900
Chicago, Illinois 60603
(312) 363-3700
efeldman@millershakman.com
dklotnia@millershakman.com
mkabat@millershakman.com